Coös,
June 29, 1907.

### Madigan, *Adm'r*, v. Berlin Street Railway.

A verdict cannot be ordered for the defendant in an action for negligence, on the ground of inherent incredibility of the testimony in behalf of the plaintiff and a preponderance in the evidence adduced by the defendant, unless it is certain that reasonable men, upon a consideration of all the proof, must unanimously decide the issue adversely to the plaintiff.

Case, for negligently causing the death of the plaintiff's intestate. Trial by jury and verdict for the plaintiff. Transferred from the December term, 1906, of the superior court by *Stone*, J., on the defendants' exception to the denial of a motion for an order directing a verdict in their favor.

*Henry F. Hollis* and *Thomas H. Madigan, Jr.*, for the plaintiff.

*Rich & Marble, Goss & Tardivel*, and *Foster & Foster* (of Maine), for the defendants.

Chase, J. The plaintiff's intestate, a boy about seven years old, was run over and fatally injured by a car on the defendants' railway in Main street in Berlin, opposite the French Catholic convent. The convent is on the westerly side of the street, and the defendants' railway track is on the extreme easterly side, the easterly rail being within about six feet of the fence dividing the street from the adjoining land. On the easterly side of the fence and near to it there is a branch railroad, which is operated by steam power. The intestate, with several of his companions of about the same age, having just been dismissed from a school in the convent in accordance with its daily routine, went across the street and got upon the fence to watch a locomotive and train of cars that were passing over the steam railroad. As the defendants' car passed, or was about to pass, the children on the fence, the intestate alighted from the fence and stepped either in front of, or against, the car and received the injury complained of. The evidence tended to prove that pupils from the convent schools were usually around and near the defendants' track opposite the convent at the hour of the day when the intestate was injured.

The negligence alleged by the plaintiff consisted of the fast driving of the car, the acts of the motorman in looking away from the track as the car approached the children, and the omission to ring the bell or give other warning of the car's approach. The

plaintiff laid before the jury evidence tending to prove all these propositions. The defendants do not question the relevancy or competency of the plaintiff's testimony, but they say that portions of it are inherently incredible, and that it, as a whole, was greatly outweighed by their testimony, and consequently that they were entitled to have a verdict ordered in their favor. The record does not disclose any such absurdity in the plaintiff's testimony, or any such preponderance in the weight of the defendants' testimony, as would justify the conclusion that impartial, reasonable men would unanimously find, from a consideration of it, that the boy's injury was not due to the defendants' negligence in some one or more of the particulars alleged. If the motorman was looking away from the track and did not notice the boys upon the fence,—if he was driving the car without any regard to the probable presence of children dangerously near the track at that place and hour of the day, or to the actual presence of the children .upon the fence at that time,—it might reasonably be found that he did not exercise the care that ordinary prudence required under the circumstances. Even if he saw the boys upon the fence, ordinary prudence would seem to require, in view of their tender years, that some precautions should be taken to avoid injuring them in case they suddenly stepped down from the fence, especially if their attention was fixed upon the locomotive and train passing over the steam railroad. It cannot be said with confidence that reasonable men would unanimously justify the motorman in assuming that children of that age would remain on the fence while his car passed them, especially if they were not aware of its approach.

It is argued that the ringing of the bell would have frightened, the children and caused them to jump into a place of danger. This suggestion discloses a consciousness that they were in a dangerous position because of the approaching car, and that care was required in driving the car past them. Whether the requirements of ordinary care would be satisfied by ringing the bell, or by omitting to ring it, is a question upon which men might differ. The absence of evidence of a rule or custom requiring the bell to be rung under such circumstances does not conclusively prove that it ought not to be rung. It might reasonably be inferred from the fact that the car was equipped with a bell, that it was to be used when circumstances reasonably called for its use to notify persons liable to be injured by the moving car, of the car's approach. Moreover, the use or non-use of the bell was not the only means of exercising care to avoid injuring the boys. It may have been necessary to stop the car and warn them orally to look out for it while it passed them. Like questions of fact were involved in the question whether the intestate exercised ordinary

care. The conflicting testimony raised questions of fact which it was the province of the jury to decide.

*Exception overruled.*

All concurred.